UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>JENNIFER A. GOSAR, HOWARD GALE, ELIZABETH MUELLER GRAHAM NICHOLAS PEDA, NIKITA MINKIN, JESSIE YADLOWSKY<br><br>                Defendants. | CASE NOS. 19-306; 19-307; 19-308; 19-313; 19-315; 19-320<br><br>**ORDER GRANTING GOVERNMENT'S MOTION TO QUASH SUBPOENAS** |

The United States of America (government) moves the Court to quash Defendants' subpoenas (Dkt. 16) commanding individuals with the initials of TAB, CLP, KMT and CIW to "testify at a hearing or trial," and also produce certain documents. Dkt. 19. In specific, Defendants requests these individuals produce (1) All communications between anyone at Senator Cantwell's office and Inspectors Bawden, Lee, and Cruz-Alfonso, PSO Smith, and PSO Boogertman and any other law enforcement officer; (2) All communications between anyone at Senator Cantwell's office and Defendants; (3), (4) and (5) All of the senators records and communications about requests that she respond to immigration abuses and detention; (6) All information regarding the Senator's practices or policies regarding immigration and detention; (7) All information about interacting and responding to constituents; (8) All information about

the Senator's stance on immigration; and (9) All information about how the Senator decides which policies to pursue and what legislation to support. *See* Dkt. 16.

The government moves to quash the subpoenas arguing the named individuals did not order Defendants to leave or face arrest, did not observe or participate in the handcuffing, processing and issuance of citations, and cannot give relevant testimony as to the actions or directions law enforcement officers gave Defendants involved in the case. Dkt. 19 at 2. The government contends Defendants' subpoenas seek inadmissible and irrelevant information and is an attempt to harass or embarrass the Senator's office or staff. *Id.* at 4.

In response, Defendants argue the individuals are firsthand witnesses to the events and that Thomas Bauer "apparently called security to have Senator Cantwell's constituents removed." Dkt. 23 at 5. Defendants also contend the individuals can testify about when the Federal Building is closed and when guests can remain in the building after closing hours. *Id.* Defendants further contend the requested documents and information are relevant to their necessity defense. *Id.* at 5-6. Because trial is set for January 30, 2020, the parties jointly move the Court to issue a ruling before the January 24, 2020 noting date, and as soon as possible. Dkt. 25.

The federal criminal rules allow a criminal defendant to command a witness to appear and testify and to produce "papers, documents, data, or other objects." Fed. R. Crim. P. 17(a) and (c)(1). Under Rule 17(c)(1) the court may direct the subpoenaed parties to produce the requested items for the court's review, after which the court "may permit the parties and their attorneys to inspect all or part of them." The Court may also quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

Unlike the Federal Civil Rules, Criminal Rule 17 does not permit broad discovery.

*Bowman Dairy Co. v. United States*, 341 U.S. 214, 220-21 (1951) ("Rule 17(c) was not intended to provide an additional means of discovery," but rather "to expedite the trial" by giving a defendant the right to inspect items within his adversary's possession, including items voluntarily provided to the government by third persons.) The Court in *Bowman Dairy* thus permitted the defendant to use Rule 17(c) collect certain documents the prosecutor had withheld but it quashed an expansive "catch-all provision" in the subpoena that was "not intended to produce evidentiary materials" but served "merely [as] a fishing expedition to see what may turn up." *Id*. at 221. *See also United States v. MacKey*, 647 F.2d 898, 901 (9th Cir.1981) ("[A] Rule 17(c) subpoena is not intended to serve as a discovery tool, or to allow a blind fishing expedition seeking unknown evidence ....") (citation omitted).

In *United States v. Nixon*, 418 U.S. 683 (1974), the Supreme Court held the proponent of the subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity." *Id*. at 700; *see also United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984). Additionally, even if the subpoena seeks relevant, admissible, and specific evidence, a court must consider whether the materials are "otherwise procurable reasonably in advance of trial by exercise of due diligence," whether the proponent can "properly prepare for trial without such production and inspection in advance of trial," and whether "the failure to obtain such inspection may tend unreasonably to delay the trial." *Nixon*, 418 U.S. at 699.

A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests. *See United States v. Ortiz*, 2013 WL 6842559 at * 2 (N.D. Cal. Dec. 27, 2013) (Prosecution has standing based upon its interest in avoiding undue lengthening of trial, and undue harassment of witness) citing to *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982). Additionally, a Rule 17 subpoena "should be quashed or

ORDER GRANTING GOVERNMENT'S
MOTION TO QUASH SUBPOENAS - 3

modified if it calls for privileged matter." *See United States v. Tomison*, 969 F. Supp. 587, 597 (E.D.Cal.1997). And finally, "no party may subpoena a statement of a witness or of a prospective witness" under Rule 17. Fed. R. Crim. P. 17(h).

In this case, Jennifer A. Gosar, Howard Gale, Elizabeth Mueller, Graham Nicholas Peda, Nikita Minkin and Jessie Yadlowsky ("Defendants") are charged with violating 41 C.F.R. § 102.74.385—failing to obey the lawful direction of Federal Police Officers and other authorized individuals. The parties agree Defendants were cited after they failed to leave United States Senator Maria Cantwell's Seattle office on August 6, 2019. Defendants contend they petitioned Senator Cantwell to visit immigration detention centers located at the southern U.S. border, use her "bully pulpit" to publicize her observations, and assure Defendants she would not authorize funding for the immigration facilities absent strict oversight. After receiving no response from the Senator, Defendants claim they told her staff they would wait in her Seattle office until the Senator met with them or granted their requests. Defendants claim Senator Cantwell did not respond or meet with Defendants; instead they were handcuffed at her office in the Federal Building shortly after 5:30 pm and cited under 41 C.F.R. § 102-74-385. Dkt. 12.

The government alleges Defendants entered Senator Cantwell's office in the Jackson Federal Building and were permitted to stay without interference. About 4:55 pm, security officers advised Defendants the building was closing at 5:00 pm, they needed to leave, and they could come back the next day. Defendants did not leave and at 5:15 pm, security officers again told Defendants the building was closing and they had to leave. At 5:35 pm, security officers told Defendants to leave or they would be cited. When Defendants did not leave, security officers handcuffed the Defendants, issued citations under 41 C.F.R. § 102-74-385 and escorted them out of the Jackson Federal Building. *See* Dkt. 18.

ORDER GRANTING GOVERNMENT'S
MOTION TO QUASH SUBPOENAS - 4

Given the circumstances underlying the charge Defendants face, the Court finds the government's motion to quash should be granted. The Defendants seek to subpoena information which is not relevant. There is no dispute Defendants were permitted to enter the Jackson Federal Building and allowed to remain in the lobby area of Senator Cantwell's office until the building was closed. The individuals with the initials of TAB, CLP, KMT and CIW, are not law enforcement officers. There is no evidence they directed Defendants to leave or face arrest and citation for violating the CFR at issue. Defendants claim Mr. Bauer "apparently called security to have Senator Cantwell's constituents removed." But the statement Defendants submitted in support belies the claim. In the statement submitted, Mr. Bauer states:

> At roughly 2;30 pm I went to the front desk and informed them we would not be able to secure a meeting but they could meet with a staffer. At that point there were only six individuals. They informed me they would be willing to wait. I told them they are welcome to wait but that the building closes at 5:00 pm & staff would be leaving at 5:00 pm for the day. At that point security would be making rounds & non-employees are not allowed in the building when office is closed they would be asked to leave. The individuals stated would stay. At 5 minutes to 5 pm guards came upstairs and by 5:15 pm employees left for the day. The individuals were left in the company of the building security guards.

Dkt. 24. There is also no evidence the individuals observed federal officers handcuff, remove and cite Defendants at the Jackson Federal Building. And there is no evidence they were involved in the removal of Defendants from the building. The individuals with the initials of TAB, CLP, KMT and CIW are thus not fact witnesses regarding law enforcement's request Defendants leave because the building was closed, or their subsequent arrest and citation for violating the CFR. The individuals have no relevant or admissible testimony to provide regarding the actions taken by security or law enforcement offices in arresting and citing Defendants.

Defendants also argue the individuals should be made to appear and testify because on some occasions, individuals are permitted to remain in the Jackson Federal Building after closing hours. Defendants' submissions establish they went to Senator Cantwell's office to speak with her but were informed she was not available to meet with them that day, August 6, 2019 at the Jackson Federal Building. There is no evidence the Senator was even in the building or in the federal district at the time. Despite being told the senator was unavailable, Defendants remained in the Senator's lobby even after the building was closed to the general public. By 5:15 pm, the senator's staff had left for the day. These circumstances establish there is no possibility Defendants were given permission by the subpoenaed individuals to remain in the Senator's office lobby after the building was closed.

Additionally, the documents and information Defendants command be produced are not relevant to the prosecution of the case or Defendants' defenses. Defendants contend they petitioned Senator Cantwell to visit immigration detention centers located at the southern U.S. border, use her "bully pulpit" to publicize her observations, and assure Defendants she would not authorize funding for the immigration facilities absent strict oversight. After receiving no response from the Senator, Defendants went to her Seattle office and declined to follow law enforcement requests that they leave because the federal building was closed.

Defendants indicate they intend to raise the following defenses to their actions: necessity; the exercise of sincerely held religious beliefs that are protected by the Religious Freedom Restoration Act (RFRA) and the exercise of their First Amendment rights to petition "their unresponsive senator at the time of their arrest." *See* Motion for Jury Trial, Dkt. 8 at 5. Defendants' defenses rest upon information Defendants possessed at the time of their arrest, not information they did not possess and now seek to obtain via the subpoenas at issue. Hence their

argument the individuals can testify about the Senator's role, legislative authority, immigration issues, and relationship with constituents is not relevant to the proffered necessity defense.

Defendants also contend the individuals can testify about the lack of legal alternatives which they claim support their necessity defense. The contention fails. There is no evidence the individuals are qualified to render opinions about legal alternatives to the acts Defendants undertook in this case. Moreover, the statements of the individuals Defendants submitted indicate the individuals offered Defendants multiple alternatives to simply sitting in a closed Federal Building until security officers removed them. Defendants were told they could come back the next day; Defendants were offered the chance to discuss their concerns with one of the Senator's staff; Defendants were asked if they were willing to take a call later in the evening and Defendants were offered to submit scheduling requests for a meeting. Defendants, however, declined each offered alternative. *See* Dkt. 24.

Because Defendants' subpoenas demand materials and the presence of witnesses that fail to meet the relevance requirement set forth in *Nixon*, the Court **GRANTS** the government's motion, Dkt. 19, and **ORDERS** the subpoenas in this matter, Dkt. 16, are hereby **QUASHED.**

DATED this 17th day of January, 2020.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge